OPINION OF THE COURT
Edward H. Lehner, J.
Before the court is a motion by defendant Bekins Van Lines, Inc. (Bekins) for dismissal of the complaint, pursuant to CPLR 3211 (a) (1) and (7) and 3212 "insofar as it states a cause of action against Bekins in excess of $25,000,” and judgment on its cross claim against codefendant National Movers Co., Inc. (National), and a cross motion by National pursuant to CPLR 3211 (a) (1) and (7) dismissing the complaint "to the extent that damages are demanded in excess of $25,000”.
The plaintiff and Bekins entered into a written contract whereby Bekins would transport plaintiffs household goods and possessions from Beverly Hills, California, to New Jersey. Bekins delivered this shipment to a warehouse operated by National where the property was destroyed in a fire which damaged the warehouse.
The complaint alleges that: Bekins was negligent in "depositing plaintiffs belongings in an unsafe warehouse and in failing to take reasonable and proper precautions”; National was negligent in various ways in permitting the fire to occur and not acting reasonably under the circumstances; the lost property had a value of $397,075, which sum, together with the loss of use of the property valued at $39,707.50 per year, plaintiff seeks to recover herein.
The answer of Bekins asserts that any liability is limited to $25,000 pursuant to the valuation of the goods placed on the uniform household goods bill of lading and expense bill (bill of lading) by plaintiff. The bill of lading contains a separate box for valuation wherein the shipper (plaintiff) is required to place in his or her own handwriting a valuation of the property being shipped. Above the line in which the valuation was inserted appears the following language:
"Unless the shipper expressly releases the shipment to a value of 60 cents per pound per article, the carrier’s maximum liability for loss and damage shall be either the lump sum value declared by the shipper or an amount equal to $1.25 for each pound of rated weight in the shipment, whichever is greater.
"The shipment will move subject to the rules and conditions *994 of the carrier’s tariff. Shipper hereby releases the entire shipment to a value not exceeding”. Below said material plaintiff inserted the sum of $25,000.
In her opposing affidavit, plaintiff asserts that when she signed the bill of lading "the agent for Bekins, Mike Koveny, recommended that I take $25,000 in insurance. I therefore signed for $25,000 in insurance.” Plaintiff further states: "The agent never advised me that the $25,000 represented a limit on the carrier’s total liability. He assured me that the $25,000 on the form, provided sufficient insurance coverage.”
In analyzing plaintiff’s affidavit, the court observes that she does not assert that she failed to read or understand the above-quoted limitation of liability, nor deny that she was offered a higher valuation if she wished to pay an additional charge, nor assert that Bekin’s agent made any representations that were in conflict with the limitation of liability clause. The assertion of plaintiff’s counsel that "the shipper was never given the option of obtaining coverage for full value” is not supported by any statement in plaintiff’s affidavit, which affidavit does not explain why the suggestion that $25,000 was sufficient insurance was accepted when the property was allegedly worth almost 16 times that sum.
Since this shipment was made interstate, the dispute is subject to Federal law as, with the enactment of the so-called Carmack Amendment, "Congress superseded diverse state laws with a nationally uniform policy governing interstate carriers’ liability for property loss” (New York, New Haven & Hartford R. R. Co. v Nothnagle, 346 US 128, 131 [1953]).
The Carmack Amendment (49 USC § 20 [11]) prior to the 1978 codification read in part as follows: "Any common carrier * * * receiving property for transportation from a point in one State * * * to a point in another State * * * shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it * * * and any such common carrier * * * shall be liable to the lawful holder of said receipt or bill of lading * * * for the full actual loss, damage, or injury to such property caused by it * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading * * * and any such limitation, without respect to the manner or form in which it is sought to be made is declared to be unlawful and void * * * Provided, however, That the provisions hereof respecting liability for full actual *995 loss, damage, or injury * * * shall not apply * * * to property * * * received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released * * * and any tariff schedule which may be filed with the commission pursuant to such order shall contain specific reference thereto and may establish rates varying with the value so declared and agreed upon; and the commission is empowered to make such order in cases where rates dependent upon and varying with declared or agreed values would, in its opinion, be just and reasonable under the circumstances and conditions surrounding the transportation.” (Emphasis supplied.)
In 1978 Congress recodified the Interstate Commerce Act, and the pertinent provisions with respect to limitation of liability by common carriers are now contained in 49 USC §§ 10730 and 11707, which read in part as follows:
Section 10730 (a): "The Interstate Commerce Commission may require or authorize a carrier (including a motor common carrier of household goods * * *) providing transportation or service subject to its jurisdiction * * * to establish rates for transportation of property under which the liability of the carrier for that property is limited to a value established by written declaration of the shipper, or by a written agreement, when that value would be reasonable under the circumstances surrounding the transportation.”
Section 11707 (c) (4): "A common carrier may limit its liability for loss or injury of property transported under section 10730 of this title.”
Plaintiff contends that since the property damaged had a value of $397,075, the valuation of $25,000 is unreasonable, and under the terms of section 10730 (a) may not be enforced.
An initial reading of said section could well leave one to agree with plaintiff that a limitation of liability is unenforceable unless the valuation inserted is reasonable, and one court (National Semiconductor Corp. v Commercial Lovelace Motor Frgt., 560 F Supp 908 [ND Ill 1983]) appears to have adopted such interpretation.
*996 However, an examination of the legislative history indicates that the position is untenable. As the statute read prior to 1978 the portion of 49 USC § 20 (11) italicized above referring to reasonableness refers to rates to be approved by the Interstate Commerce Commission. There is nothing in the statute prior to 1978 that would any way suggest that a court should review the reasonableness of a valuation inserted by the shipper for liability purposes, and no case has been located where a court reviewed reasonableness, even though the reports contain numerous cases where a party has claimed that the limitation should not be enforced for other reasons. (See, e.g., Adams Express Co. v Croninger, 226 US 491 [1913]; Pierce Co. v Wells, Fargo & Co., 236 US 278 [1915]; Rocky Ford Moving Vans v United States, 501 F2d 1369 [8th Cir 1974]; Marohn v Burnham Van Servs., 478 F Supp 49 [ND Ill 1979]) where the court noted (p 52) that the "limitation will be binding even though it may be grossly disproportionate to the actual value of the shipment.”
If the 1978 codification were to require a court to review the reasonableness of the valuation, this would clearly be a radical departure from prior law.
To demonstrate that there was no intent to make such change, one need go no further than the title of the bill containing the 1978 amendment (Pub L 95-473) which states that it is "An Act to revise, codify, and enact without substantive change the Interstate Commerce Act” (emphasis supplied). The report of the House Judiciary Committee approving the bill (HR Rep No. 95-1395, reprinted in 1978 US Code Cong & Admin News 3009) contains the following statement of purpose (at 3013). "The purpose of the bill is to restate in comprehensive form, without substantive change, the Interstate Commerce Act and related laws, and to enact those laws as subtitle IV of title 49, United States Code. In the restatement, simple language has been substituted for awkward and obsolete terms, and superseded, executed, and obsolete statutes have been eliminated.”
In the report it is again noted (at 3017) that in "making changes in the language, precautions have been taken against making substantive changes in the law.” Finally, the Law Revision Counsel notes in a letter to a congressman (at 3017) that "[e]ven if the language used in the codification appears to make a substantive change, the courts will look to the predecessor statute and legislative history if necessary to interpret the language of the codification.”
*997 Thus, with it being evident that Congress did not intend the type of substantive change that would ensue if plaintiffs position were adopted, the court concludes that the language in section 10730 referring to reasonable value again, as in the prior statute, relates (although in an ambiguous manner) to rate establishment.
Moreover, to adopt plaintiffs interpretation would result in establishing a principle contrary to one of the basic concepts of the Carmack Amendment, which is to enable a shipper to reduce the cost of shipping by insuring property for less than full value, which lesser sum is referred to as the "released value”.
In the report submitted to the House of Representatives (HR Rep No. 96-1069, reprinted in 1980 US Code Cong & Admin News 2283), approving a bill which became Public Law 96-296, the following is stated (at 2307-2308): "Permitting released value rates increases the range of choices available to the shipping public. With a full value rate, a shipper pays one price for two distinct services which are tied together, the actual linehaul of a commodity from one point to another and full insurance on the commodity on that movement. Released rates, in effect, allow the shipper to pay a lesser price for hauling the goods and a separate agreed-upon price for whatever amount of insurance the shipper desires. Consequently, if the commodities are of low value or if the shipper wants to take the risk, the shipper may want only partial insurance or none at all. Having this option should reduce the total price the shipper must pay for the transportation.” (See also, Klicker v Northwest Airlines, 563 F2d 1310 [9th Cir 1977].)
If a shipper could place a low valuation on his property and consequently pay a lower rate, it would be contrary to the congressional statutory scheme to allow the shipper to claim, after the property is damaged, that the valuation was unreasonably low. In First Pa. Bank v Eastern Airlines (731 F2d 1113 [3d Cir 1984]) the court said (p 1116): "The agreed upon value merely constituted an estoppel against the unfairness of asserting a larger amount as the true value when the carrier was sued for damages in spite of the fact that a smaller value had been used to calculate the rate. The legal validity of an agreed value contract merely enabled the carrier’s rate to be reasonably measured in accordance with the risk to which it was exposed by reason of the value of the property transported.”
*998 Although the court will not review the reasonableness of the valuation inserted by plaintiff, this does not mean defendants are entitled to have their motions granted as the court must next determine whether there are any other factual issues open with respect to the enforceability of the limitation of liability.
In Flying Tiger Line v Pinto Trucking Serv. (517 F Supp 1108 [ED Pa 1981]) the court said at page 1112: "Because the public policy as contained in the Carmack Amendment is to hold carriers * * * liable for the actual injury to goods shipped, arrangements attempting to limit liability will be strictly construed against the carrier.”
If the carrier did not inform plaintiff of the opportunity of choosing a higher liability by paying a higher charge, there would be a question of fact as to enforceability of the lower valuation. (See, New York, New Haven & Hartford R. R. Co. v Nothnagle, supra; Chandler v Aero Mayflower Tr. Co., 374 F2d 129 [4th Cir 1967]; Klicker v Northwest Airlines, supra; Trans-American Van Serv. v Shirzad, 596 SW2d 587 [Tex Civ App 1980].) However, as indicated above, plaintiff’s affidavit does not specifically assert any such lack of notice.
However, the court finds that plaintiff’s affidavit does set forth sufficient doubt as to the nature of the discussions between plaintiff and Bekins’ agent so as to warrant a denial of the motions.
In Anton v Greyhound Van Lines (591 F2d 103 [1st Cir 1978]), the court said with respect to the enforceability of a limitation of liability: "There must be an absolute, deliberate and well-informed choice by the shipper” (p 108).
In Caten v Salt City Movers & Stor. Co. (149 F2d 428 [2d Cir 1945]), it was said (p 432) that an agreement limiting liability must be "the result of an equally certain specified action by the shipper in respect to a voluntary valuation of his goods.”
In Chandler v Aero Mayflower Tr. Co. (supra), the court said (p 135): "In cases where, as in the instant controversy, questions of mistake and fraud are raised in connection with the formation of contracts limiting the liability of a common carrier, relevant circumstances and policies call for a not so strict application of pertinent principles of contract law to afford reasonable protection to the shipper. This is so because arrangements limiting liability contravene a strong public policy expressed in the common law come within a carefully defined exception to the general thrust of Section 20 (11) of *999 the Interstate Commerce Act placing on the carrier absolute liability for damage, and are in operation attended by characteristics of an adhesion contract.”
Finally, the court observes that in 1980 Congress enacted the Household Goods Transportation Act. Although the provisions thereof (providing for cost estimates, guaranteed pickups and delivery times, penalties for delay, and an informal dispute resolution program) are not relevant to the case at bar, they do demonstrate Congress’ concern for the problems faced by unsophisticated shippers of household goods. In House Report No. 96-1372 (reprinted in 1980 US Code Cong & Admin News 4271) filed in connection with said act (Pub L 96-454), it was said (at 4272): "The fact that the household moving sector does business directly with individual shippers also sets it apart from the rest of the trucking industry. These shippers usually move only once or twice in their lives and, consequently, lack a thorough understanding of the industry and sufficient clout to negotiate with it. Their situation is made more vulnerable by the fact that the moves involve all of their personal possessions, which often are of a fragile nature.”
Under the foregoing principles, the court finds that based on the papers submitted plaintiff is entitled to the opportunity to establish before the trier of fact that there was no meeting of the minds with respect to the contractual $25,000 limitation and that she is, therefore, not bound thereby. Hence, defendants’ motions are denied.